IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHERMAN BROWN, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>BERNARD W. BOOKER, Warden, )<br>    Respondent. ) | Civil Action No. 7:16-cv-00576<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION AND ORDER**

In 1970, Sherman Brown was convicted of murdering the four-year-old son of a woman the court has referred to as Mrs. B, who herself was stabbed several times, but survived. On March 31, 2021, the court issued an opinion and order granting the respondent's motion to dismiss and denying Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Brown v. Booker*, 2021 WL 1207751 (W.D. Va. Mar. 31, 2021). (Dkt. Nos. 50, 51.) Brown now moves to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (Dkt. No. 52.) Brown's primary argument is that the court erred in not holding an evidentiary hearing before resolving the petition on the merits.

For the reasons stated below, an evidentiary hearing is not necessary or required to resolve Brown's petition. The court will therefore deny Brown's Rule 59(e) motion.

I. BACKGROUND

The court adopts by reference the extensive factual and procedural background set forth in its March 31 opinion. 2021 WL 1207751, at *1–12. Brown is challenging his 1970 first-degree murder conviction and life prison sentence. Brown's petition contends that (1) new evidence establishes his actual innocence and (2) introduction of invalid scientific testimony

violated his right to due process and undermined the fundamental fairness of his trial. Respondent moved to dismiss.

The court dismissed the first claim because the state court's determination that Brown failed to meet the required burden of proof on his "freestanding" actual innocence claim was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts. 2021 WL 1207751, at *16–17.

Regarding the second claim, the court explained that for it to be addressed on its merits, Brown needed to pass through the gateway established by *Schlup v. Delo*, 513 U.S. 298 (1995). "In *Schlup*, the court established a standard for an actual innocence claim to be a gateway to allow the court to consider otherwise untimely and defaulted claims." 2021 WL 1207751, at *17 (citing *Schlup*, 513 U.S. at 329). When a petitioner raises such a claim, supported by new reliable evidence, the court must consider all evidence, old and new, inculpatory and exculpatory, admissible and even inadmissible, to determine whether it is more likely than not that a reasonable juror would not find the petitioner guilty beyond a reasonable doubt if all the evidence were presented. *Id.* (citing *Schlup*, 513 U.S. at 327–28). "Stated another way, the court must determine whether it is more likely than not that any reasonable juror would have a reasonable doubt." *Id.* (citing *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012)). "[T]enable actual-innocence gateway claims are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup*, 513 U.S. at 329)).

In a footnote, the court stated that "[n]either party requested a hearing, and the relevant facts pertaining to DNA evidence, hair, and fiber are not disputed. The parties dispute only the

2

significance of those facts." 2021 WL 1207751, at *17 n.6. The court acknowledges its oversight because Brown did, in fact, request an evidentiary hearing. *See, e.g.*, Dkt. No. 49 at 1 ("Respondent's Motion to Dismiss should be denied and Mr. Brown should be afforded an evidentiary hearing."); Dkt. No. 19-1 at 55 ("If the Court determines that relief may not be granted in the absence of an evidentiary hearing, order an evidentiary hearing to resolve all factual issues.").

The court then analyzed the merits of Brown's *Schlup* gateway claim:

> The court begins by noting that fifty years ago, the Supreme Court of Virginia affirmed the sufficiency of the evidence against Brown, stating that a "detailed review of the evidence of the circumstances surrounding this murder and the evidence pointing to the defendant's guilt as the murderer leaves no doubt in our mind that this evidence, viewed in the light most favorable to the Commonwealth, amply supports the jury's verdict." *Brown*, 184 S.E.2d at 787. Such evidence included Mrs. B's identification of Brown. Two witnesses established that Brown was on Mrs. B's property after 3:00 p.m. on October 1, 1969, and Brown conceded his presence there to the resentencing jury. Larry testified that Brown frequently jogged in Mrs. B's field, corroborating her account of her prior acquaintance with Brown. Larry also corroborated Mrs. B's report that Brown telephoned her before he arrived at her house, a call that Brown admitted – in later parole proceedings – he had made.
>
> Further, Brown made post-sentencing admissions during his parole proceedings, including that he went to Mrs. B's house after being told that she did not wish to see him. Brown reported that Mrs. B gave him a drink of water. The paper cup that Mrs. B gave to Brown was in Mrs. B's living room when Deputy Guthrie arrived. Finally, Deputy Bailey testified that when asked if he had been on Mrs. B's property that day, Brown replied that he had not. A jury could reasonably conclude that this false statement to the investigating officer was made to conceal Brown's guilt.
>
> Brown also made additional inculpatory statements to the parole board. During a parole interview in 1991, Brown stated, "I accept full responsibility for my crime and I feel sorry for the victim, but I can't undo what's been done." *In re Brown*, 810 S.E.2d at 451. In a 1985 parole interview, Brown expressed "fervent regret and

3

remorse." *Id.* In a 1984 interview, Brown offered a detailed statement to the parole board explaining how the crimes occurred. After a bout of "drinking alcohol" and "taking some LSD," he approached Mrs. B at her home knowing that she did not want to see him. After Mrs. B gave water to Brown, she "turned into a snake." In a later parole interview, he recalled standing over Mrs. B with the "knife handle in his hand." *Id.*

Brown recalled feeling like he was "tripping" at the time of the offense. He could not specifically remember stabbing Mrs. B and murdering her son, but he remembered that he had blood all over him and he knew something was wrong. *Id.* Brown told the parole board in 1991 that he thought he "committed the crimes, stabbed Mrs. B and killed her 5 y/o son." *Id.* Brown discussed the circumstances of the crimes because he knew what drugs and alcohol can do to a person and did not want another young child's life taken in vain. *Id.*

Finally, the court addressed the scientific evidence advanced by Brown. This included DNA evidence that excludes Brown and Mrs. B's husband as contributors of genetic material; a 2015 report that hair comparison analysis "exceeds the limits of science"; evidence concerning severe deficiencies in fiber examination; and blood analysis evidence. The court found that none of this evidence makes it "more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." 2021 WL 1207751, at *18. The DNA evidence, for example, "does not demonstrate that another person attacked Mrs. B. At best, it invites speculation about Mrs. B's sexual activities outside of her marriage." *Id.*

Thus, the court granted the motion to dismiss, dismissed the petition, and declined to issue a certificate of appealability.

## II. ANALYSIS

Brown timely filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 59(e) motions can be granted for

4

three reasons: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at the time of judgment; or (3) to correct a clear error of law or prevent manifest injustice. *Arvon v. Liberty Mut. Fire Ins. Co.*, --- F. App'x ----, 2021 WL 3401258, at *3 (4th Cir. Aug. 4, 2021) (citing *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). A district court may amend a judgment under Rule 59(e) to "prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Another purpose is to "permit a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). "Mere disagreement with a court's ruling does not support a Rule 59(e) motion." *Hutchinson*, 994 F.2d at 1082. Indeed, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403.

As noted, the court erred when it stated that Brown did not request a hearing. That misstatement was harmless, however, because Brown is not entitled to an evidentiary hearing on his § 2254 petition.

Initially, § 2254(e)(2) precludes a district court from conducting an evidentiary hearing on a federal habeas claim if the petitioner "failed to develop the factual basis of a claim in State court proceedings," unless the petitioner can meet one of two exceptions.[1] Assuming, without

---

[1] (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

    (A) the new claim relies on—

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

deciding, that § 2254(e)(2) does not proscribe an evidentiary hearing,[2] the court must assess whether Brown is entitled to one. *See Wolfe*, 565 F.3d at 169. A § 2254 petitioner who has "diligently pursued his habeas corpus claim in state court is entitled to an evidentiary hearing in federal court, on facts not previously developed in the state court proceedings, if the facts alleged would entitle him to relief." *Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). Also, a petitioner must satisfy one of six factors enumerated by the Supreme Court in *Townsend v. Sain*, 373 U.S. 293, 313 (1963).[3]

In assessing whether a federal habeas corpus petition can be properly dismissed without an evidentiary hearing or discovery, the court must evaluate the petition under the standards governing motions to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Conaway*, 453 F.3d at 582 (citing *Walker v. True*, 399 F.3d 315, 319 n.1 (4th Cir.

---

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2).

[2] The Fourth Circuit has recognized that an actual innocence contention under *Schlup* is procedural in nature and could be construed as not constituting a "claim" under § 2254(e)(2). *See Wolfe v. Johnson*, 565 F.3d 140, 167 n.40 (4th Cir. 2009). The Fourth Circuit has reserved ruling on this issue. *See id.* The Fourth Circuit has also recognized that the weight of authority finds that § 2254(e)(2) does not apply to *Schlup* claims. *See Teleguz*, 689 F.3d at 331 n.6 ("Our sister circuits considering whether the limitation on evidentiary hearings in § 2254(e)(2) applies to *Schlup* claims have overwhelmingly found that it does not.") (collecting cases).

[3] The six *Townsend* factors, one of which must be satisfied in order to obtain an evidentiary hearing in a federal habeas corpus proceeding, are:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend*, 372 U.S. at 313.

2005)). Accordingly, the court is "obliged to accept a petitioner's well-pleaded allegations as true," and the court must "draw all reasonable inferences therefrom in the petitioner's favor." *Id.*

Brown argues that the court misapprehended the DNA evidence pertaining to Mrs. B's sexual activities outside of her marriage. Brown takes particular umbrage with the court's statement that the DNA evidence "does not demonstrate that another person attacked Mrs. B. At best, it invites speculation about Mrs. B's sexual activities outside of her marriage." 2021 WL 1207751, at *18. According to Brown, the DNA evidence excluding Brown and Mrs. B's husband as the source of male DNA on the vaginal smear slide, combined with Brown's allegation in his petition that Mrs. B was in a monogamous relationship with her husband, definitively excludes Brown as the person who sexually assaulted and attacked Mrs. B. *See* Am. Pet. 3, Dkt. No. 19-1 ("In 2016, M.B. informed an Agent for the Commonwealth that, at the time of the attack, she had not had consensual sex with anyone other than her husband.").[4]

At this stage, the court is obliged to accept the allegations in the petition as true. Thus, the court assumes as true Mrs. B's statement that she was in a monogamous relationship. Further, the court assumes that she would come across as a truthful and reliable witness in making this statement. Even so, Brown could never prove Mrs. B's professed monogamy to be true as an unassailable fact, which is how Brown is representing it to be. For purposes of the

---

[4] *See also* Am. Pet. at 27–30:

> M.B. was married, and she had a monogamous sexual relationship with her husband, and she told the Commonwealth's Attorney in 2016 that her husband was her only consensual sexual partner at the time of this incident. . . . Bode's analysis proves, in a number of different respects, that M.B.'s husband was not the source of the male DNA found on the slide. . . . M.B. has stated that she had a monogamous relationship with her husband, and did not have consensual sex with any other person. Because the supplemental DNA testing excludes her husband as the source of the male DNA on the vaginal smear slide, the DNA found on that slide must have come from the perpetrator. But the previous DNA testing also excludes Mr. Brown as the contributor to the male DNA found on the slide and, thus, combined, these results are highly exculpatory.

court's *Schlup* analysis, the court must consider whether "'no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329)). It would not be unreasonable for a juror to disbelieve Mrs. B, for example, on the theory that many or most people would deny being an adulterer. Therefore, the court stands by its analysis that the DNA evidence does no more than invite speculation about Mrs. B's sexual activities outside of her marriage, and Brown is not entitled to discovery or an evidentiary hearing in light of this evidence.

Brown also argues that the court erred in crediting inculpatory statements made by Brown during his parole hearings. Brown asserts that such admissions have little relevance because innocent inmates who fail to admit culpability suffer severe consequences long after they are sentenced. Brown maintains that the court should have held an evidentiary hearing to consider testimony from false confession experts to explain the incentives that lead innocent inmates to admit to crimes they did not commit. The court understands the incentive to profess innocence in parole hearings, but this dynamic does not undermine the court's conclusion that a reasonable juror could find Brown guilty beyond a reasonable doubt. The fact that some inmates lie about culpability during parole hearings does not imply that this is always the case. Moreover, Brown's parole statements were just one aspect of the evidence pointing towards Brown's guilt. *See, e.g.*, 2021 WL 1207751, at *18 ("Such evidence included Mrs. B's identification of Brown. Two witnesses established that Brown was on Mrs. B's property after 3:00 p.m. on October 1, 1969, and Brown conceded his presence there to the resentencing jury.").

Finally, Brown maintains that the court erred in stating that "the relevant facts pertaining to DNA evidence, hair, and fiber are not disputed. The parties dispute only the significance of

8

those facts." 2021 WL 1207751, at *17 n.6.  Brown points out that the parties dispute whether the DNA evidence may be contaminated.  The court's misstatement, if it was a misstatement, was harmless because the court accepted as true the admissibility and validity of the DNA evidence when it analyzed the *Schlup* issue.[5]

## III.  CONCLUSION

For the foregoing reasons, Brown's motion to alter or amend the judgment (Dkt. No. 52) is DENIED.  The clerk of court is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: March 31, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[5] Brown asks the court to reconsider its denial of a certificate of appealability.  The court does not do so because the court believes that Brown failed to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).